UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JORGE R. BLACKMORE GOMEZ, Pro se,

        Plaintiff,

   v.

MARK H. HARDIE, individually and in his official capacity; CARL F. JEPSEN, individually and in his official capacity; NICHOLAS M.M. DRUM, individually and in his official capacity; DICK BOHLMANN, individually and in his official capacity; BILL WOODS, individually and in his official capacity; TOM M SHEIRBON, individually and in his official capacity; CITY OF MAYWOOD PARK, a municipal corporation within the State,

        Defendants.

Case No. 3:13-cv-00161-ST

FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Jorge R. Blackmore Gomez ("Gomez"), appearing *pro se*, filed this action on January 29, 2013, and has applied to proceed *in forma pauperis* (docket #1). An examination of the application reveals that Gomez is unable to afford the fees of this action. Accordingly, his application should be granted and no filing fee should be assessed. However, for the reasons set forth below, the Complaint should be dismissed without prejudice for lack of jurisdiction.

1 – FINDINGS AND RECOMMENDATIONS

**ALLEGATIONS**

The Complaint alleges six claims for relief against the City of Maywood Park ("Maywood Park"), its Mayor (Mark H. Hardie ("Mayor Hardie")), three inspectors working for the City of Troutdale, Oregon ("Troutdale") (Dick Bohlmann ("Bohlmann"), Tom M. Sheirbon ("Sheirbon"), and Bill Woods[1] ("Woods")), and two attorneys in private practice apparently representing Troutdale (Carl F. Jepsen ("Jepsen") and Nicholas Drum[2] ("Drum")). The claims are premised upon Gomez's apparent dispute with Mayor Hardie, and Troutdale officials over the repair and improvement of certain real property that he owns in Maywood Park.

Gomez's property in Maywood Park was robbed and vandalized in April and May 2010. Complaint, ¶ 13. Within a couple of months, Gomez began repairing the damage and was "considering the building of a dormer on the attic of his property." *Id*, ¶ 14. On August 2, 2010, Mayor Hardie made an "unannounced and unauthorized entry [o]nto [the] property, allegedly to investigate allegations of non-permitted construction activity . . . ." *Id*, ¶ 15. During that visit, Hardie told Gomez he "needed a building permit and ordered [him] to obtain it from the City of Troutdale." *Id*.

In 1999 Gomez had apparently obtained a building permit for a garage from the City of Portland, Oregon. *Id*, ¶ 16. In response to receiving that information, Mayor Hardie "clarified . . . that the City had changed the building permits review" and that building permits in August 2010, were processed by the City of Troutdale. *Id*. Shortly after Mayor Hardie left, Bohlmann and Sheirbon entered Gomez's property without Gomez's permission, installed "Stop Work"

---

[1] The Complaint does not identify Woods, other than to say he was "allegedly acting under the direction of the City." Complaint, ¶ 32. However, Woods is listed as the Plumbing Inspector on Troutdale's web page. *See* http://www.ci.troutdale.or.us/building/contact.htm (last accessed Feb. 4, 2013). That same page lists Bohlmann as a Building Official/Electrical Inspector and Tom Sheirbon as a Building Inspector.

[2] The website of the Oregon State Bar lists both Carl F. Jepsen and Nicholas Drum as attorneys in private practice at the same law firm, Warren Allen LLP. *See* http://www.osbar.org/index.html# (last accessed Feb. 4, 2013).

2 – FINDINGS AND RECOMMENDATIONS

signs, took pictures, and ordered Gomez to apply for a building permit with the City of Troutdale as a condition of resuming the repairs to his property. *Id*, ¶¶ 19-20.

On August 3, 2010, Gomez applied for a building permit with the City of Troutdale. *Id*, ¶ 21. Over the ensuing weeks, Gomez attempted unsuccessfully to obtain the zoning and building permit clearances he needed to resume work. *Id*, ¶¶ 21-29. By mid-August, Gomez began experiencing dizziness, nausea, and vomiting, and began treatment for anxiety. *Id*, ¶ 30.

In late September 2010, after receiving no response to his requests for zoning and building permit clearance, Gomez resumed repairs to stave off further weather damage. On September 27, 2010, two days after repairs resumed, Bohlmann and Woods made a second unannounced and unauthorized entry onto the property and took photos. *Id*, ¶ 32.

A month later, on October 22, 2010, Gomez received a letter from Jepsen demanding that he stop the repairs and dormer project. *Id*, ¶ 33. The letter threatened court action and ordered Gomez to bring his property into compliance with applicable building codes. *Id*. In response, Gomez stopped all repairs and work on the dormer. *Id*, ¶ 35. Gomez sent a letter to the Maywood Park City Council, seeking it to "intervene to stop the outrageous intimidations of Jepsen, and the irresponsible behavior of Hardie." *Id*, ¶ 37. However, his letter was never delivered to council members because Gomez did not provide enough copies. *Id*, ¶ 39. Gomez attended the City Council meeting on or about December 14, 2010, but Mayor Hardie would not allow him to speak and explain his case. *Id*, ¶ 40. Instead, Mayor Hardie made a protacted speech himself describing Gomez's actions as irresponsible and unacceptable and pronouncing that Gomez's project would "never be approved." *Id*. Gomez then publicly stated his intent to sue the city for abuse of power, illegal entry onto his property, the damages caused due to his

inability to repair the damage to his property, and the ill health effects[3] he had suffered as a result of the actions of city officials. *Id*, ¶ 42.

In about October 2011, Gomez hired an attorney to help him. As a result of that intervention, on November 16, 2011, Gomez signed a consent to allow inspection of his property on the condition that Mayor Hardie not be allowed entry. *Id*, ¶ 57. On December 14, 2011, a group of five individuals, including two building inspectors, two deputies from the Multnomah County Sheriff's Office, and Drum, came to Gomez's property. *Id*, ¶ 58. Bohlmann took pictures without Gomez's permission. *Id*, ¶ 59.

On January 19, 2012, Drum sent a three page letter to Gomez ordering him to produce documentation from an Oregon certified engineer, architect, and contractor, and threatening to cause the building to be repaired or demolished. *Id*, ¶ 60. In May 2012, Gomez learned that Mayor Hardie and/or other city officials had been sending all Maywood Park home owners seeking building permits, except him, to the City of Portland. *Id*, ¶ 61.

Gomez learned in May 2012 that, prior to October 2012, the City of Troutdale and its officials did not have jurisdiction to inspect his property or process building permits because no valid inter-agency agreement or contract allowed inspection or building permit processing for properties located in the City of Maywood Park. *Id*, ¶¶ 62-63.

Gomez filed this action on January 29, 2013.

///

///

///

---

[3] Gomez describes a host of medical issues that he experienced beginning in December 2010 and continuing approximately 10 months thereafter. *Id*, ¶¶ 45-55. In January 2011, he was declared disabled by the Social Security Administration. *Id*, ¶ 66.

4 – FINDINGS AND RECOMMENDATIONS

## **STANDARDS**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FRCP 12(h)(3); *see also Cal. Diversified Promotions, Inc. v. Musick*, 505 F2d 278, 280 (9th Cir 1974) ("It has long been held that a judge can dismiss *sua sponte* for lack of jurisdiction."). Moreover, a complaint filed *in forma pauperis* may be dismissed at any time, including before service of process, if the court determines that:

> (A) the allegation of poverty is untrue; or
> (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 USC § 1915(e)(2); *see also Neitzke v. Williams*, 490 US 319, 324 (1989); *Jackson v. State of Ariz.*, 885 F2d 639, 640 (9th Cir 1989).

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 US at 325; *Lopez v. Dep't of Health Servs.*, 939 F2d 881, 882 (9th Cir 1991); *Jackson*, 885 F2d at 640.

A court must liberally construe the allegations of a *pro se* plaintiff and afford the plaintiff the benefit of any doubt. *Lopez*, 939 F2d at 883. However, under FRCP 8(a)(2), all complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 US 41, 47 (1957). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

5 – FINDINGS AND RECOMMENDATIONS

## FINDINGS

Gomez invokes federal question jurisdiction under 28 USC § 1331 based on the First Claim alleged under 42 USC § 1983 for violation of his constitutional rights. However, federal question jurisdiction is unavailable if the federal claim upon which it is based is patently without merit. *Yokeno v. Mafnas*, 973 F2d 803, 808 (9th Cir 1992). Without a viable federal claim, this court lacks jurisdiction over the state law claims for trespass (Second Claim), breach of fiduciary duty (Third Claim), and intentional infliction of emotional distress (Fourth Claim). His civil conspiracy claim (Fifth Claim) cannot stand alone because a conspiracy allegation does not give rise to § 1983 liability absent an actual deprivation of civil rights. *Woodrum v. Woodward Cnty., Okl.*, 866 F2d 1121, 1126 (9th Cir 1989) (citations omitted).

The First Claim alleges that defendants violated Gomez's right to petition the government for redress in violation of the First and Fourteenth Amendments to the United States Constitution. The thrust of this claim is that, on August 2, 2010, Mayor Hardie misrepresented to Gomez that Troutdale (and not the City of Portland) had jurisdiction over any building permit requests for property located within Maywood Park. Complaint, ¶¶ 15-16. Gomez applied for, but was denied, a building permit, and defendants have thwarted all of his subsequent efforts to obtain a permit or to discuss the matter with the Maywood Park City Council.

There are two insurmountable difficulties with the First Claim. First, federal substantive due process claims are barred where the claimant could seek equivalent relief under constitutional provisions that provide more specific guarantees: "[A] more general substantive due process claim cannot be brought if the claim is based on governmental conduct which implicates an enumerated constitutional right." *Macri v. King Cnty.*, 126 F3d 1125, 1130 (9th Cir 1997), *cert denied*, 522 US 1153 (1998). The First Claim is premised on conduct which

6 – FINDINGS AND RECOMMENDATIONS

allegedly violates a right enumerated in the First Amendment. Thus, to the extent the First Claim is based upon the more generalized notion of substantive due process, it is precluded.

Second, to the extent the First Claim is premised upon the rights enumerated in the First Amendment, it suffers from a fatal defect. As explained by the Ninth Circuit, the "protections afforded by the Petition Clause have been limited by the Supreme Court to situations where an individual's associational or speech interests are implicated." *WMX Techs., Inc. v. Miller*, 197 F3d 367, 372-73 (9th Cir 1999) (citations omitted). The First Claim is premised upon a dispute between Gomez and various city officials over the processing of a building permit application. In *WMX*, the court concluded that an permit application for a major use permit "implicates neither . . . associational or speech interests." Similarly, Gomez's application for a building permit, in and of itself, implicates no such interests and, thus, cannot provide the basis for a claim under the First Amendment.

Although his pleadings are not a model of clarity, Gomez may be alleging that his speech interests are implicated in connection with his application for a building permit because he was not permitted to speak in its support during a December 14, 2010 City Council Meeting. Complaint, ¶ 40. However, assuming that allegation would take Gomez's claim outside the rule enunciated in *WMX*, it runs squarely into a statute of limitations problem.

Because 42 USC § 1983 does not contain its own statute of limitations, courts borrow the most appropriate state statute of limitations. *Cholla Ready Mix, Inc. v. Civish*, 382 F3d 969, 974 (9th Cir 2004), *cert denied*, 544 US 974 (2005) (citations omitted). As a result, § 1983 claims filed in the District of Oregon have a two year statute of limitations. *Plumeau v. Sch. Dist. No. 40, Cnty. of Yamhill*, 130 F3d 432, 438 (9th Cir 1997) (citations omitted). Any claim for interference with Gomez's right to petition based on not letting him speak at a public meeting on

7 – FINDINGS AND RECOMMENDATIONS

December 14, 2010, would be barred if not brought within two years.  This case was filed on January 29, 2013, a little more than a month beyond that deadline.  Accordingly, to the extent his First Amendment claim is premised upon the refusal to let him speak at the December 14, 2010, City Council Meeting, it is barred as untimely.

Because Gomez has failed to adequately allege a federal claim, this court has no basis for asserting jurisdiction over his supplemental state claims.

However, Gomez also makes reference to being "discriminated against as a Mexican-American male" and being "denied equal protection."  Complaint, p. 2 (Introductory Statement), ¶ 67.  He may be trying to allege a denial of equal protection under the Fourteenth Amendment based on his race.  *See Miller v. Johnson*, 515 US 900, 904 (1995) ("Its central mandate is racial neutrality in governmental decisionmaking."); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 US 252 (1977) (local officials' refusal to rezone certain property may violate the Fourteenth Amendment if motivated by racial discrimination).  However, the Complaint does not expressly allege such a claim or even flesh out the elements of such a claim sufficiently for this court to determine if that is his intent.  Therefore, the dismissal should be without prejudice in order to allow Gomez to file an amended complaint in an attempt to state a viable claim under § 1983 for denial of equal protection based on his race.

Gomez has also filed a Motion for Appointment of Pro Bono Counsel (docket #3).  To assist him in ascertaining what claims, if any, he may be able to allege in order to invoke this court's jurisdiction, that motion should be granted for the specific purpose of filing an amended complaint.

///

///

**RECOMMENDATIONS**

Plaintiff's Application to Proceed *In Forma Pauperis* (docket #1) should be GRANTED, and no filing fee should be assessed. However, for the reasons set forth above, the Complaint should be DISMISSED without prejudice for lack of jurisdiction and with leave to file an amended complaint.

Because the Complaint should be dismissed, plaintiff's Motion for Appointment of *Pro Bono* Counsel (docket #3) should be GRANTED for the specific purpose of filing an amended complaint.

**SCHEDULING ORDER**

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, March 08, 2013. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  February 19, 2013.

/s Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

9 – FINDINGS AND RECOMMENDATIONS